UNITED STATES of America,
Plaintiff–Appellee,

v.

Susan C. SPRY, Defendant–Appellant.

No. 98–4104.

United States Court of Appeals,
Seventh Circuit.

Argued April 19, 1999.

Decided Sept. 10, 1999.

Rehearing and Rehearing En Banc
Denied Oct. 8, 1999.

Peggy A. Lautenschlager, David E. Jones (argued), Office of the United States Attorney, Madison, WI, for United States.

T. Christopher Kelly (argued), Thomas, Kelly, Habermehl & Wood, Madison, WI, for Spry.

Before POSNER, Chief Judge, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

On April 2, 1998, a federal grand jury in the Western District of Wisconsin returned an eight-count indictment against the defendant-appellant, Susan C. Spry ("Spry"). Count One of the indictment charged Spry with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1).[1] Spry pled guilty to Count One on September 14, 1998, and the district court entered judgment against Spry on November 27, 1998. Spry appeals. We affirm.

## I. BACKGROUND

On April 14, 1992, Officer John Christensen ("Christensen") of the Duluth, Minnesota, Police Department submitted an affidavit to a state judge in St. Louis County, Minnesota, requesting a "no-knock" search warrant for Spry's residence at 422 North 19th Avenue West in Duluth, Minnesota. Christensen had learned from a confidential informant that Spry was distributing illegal narcotics from her residence, in violation of 21 U.S.C. § 841(a)(1). The judge issued the no-knock warrant, based on Christensen's affidavit, ruling that an unannounced entry into Spry's residence was necessary to prevent the loss, destruction, or removal of evidence of drug trafficking and in order to protect the safety of the officers involved. The 1992 warrant authorized officers conducting the search to "enter without announcement of authority and purpose." Later the same day, police officers forcibly entered Spry's residence without knocking, announced their presence, and completed a search. Police recovered 130 grams of marijuana and over $1,000 in cash inside Spry's residence and placed Spry under arrest. Spry was convicted of possession of marijuana and sentenced to two years probation.

Five years later, on May 27, 1997, Officer Todd Maas ("Maas") of the Superior, Wisconsin, Police Department submitted an affidavit in support of his application for a search warrant for Spry's residence at 2107 Ogden Avenue in Superior, Wisconsin. In his affidavit, Officer Maas stated that within the prior 72 hours, a confidential informant ("CI") had advised the police that a third party planned to buy methamphetamine for the CI from an individual living in Superior. The affidavit stated that the Superior Police had then set up surveillance on the unknown third party and followed her to Spry's home where she remained for forty-five minutes. After the meeting at Spry's residence, the third party gave methamphetamine to the CI, who turned the methamphetamine over to police. The CI reported that the third party had told her that she had bought the methamphetamine from "Sue" during her forty-five minute meeting in Spry's residence and furthermore that Sue had stated that she had an additional two ounces for sale. The affidavit also recounted that Officer Shelly Johnson of the Duluth Police Department had received intelligence information from another CI that Spry was involved in dealing controlled substances in the Duluth/Superior area.

After reviewing Officer Mass's affidavit, a state court judge in Douglas County, Wisconsin, issued a search warrant, and police searched Spry's home at 2107 Ogden Avenue in Superior on May 27, 1997, pursuant to the warrant. During the search, police recovered 106 grams of marijuana, 37.2 grams of methamphetamine, 632.2 grams of psilocybin mushrooms, over $6,000 in cash, and various drug paraphernalia for diluting, repackaging, and redistributing controlled substances. Police placed Spry under arrest for possession with intent to distribute methamphet-

---

1. Counts two through eight are not involved in this appeal.

amine, marijuana, and psilocybin. Spry was detained in the Douglas County Jail and released on October 31, 1997, when the charges against her were dismissed in lieu of further investigation.

Thereafter, on February 16, 1998, Special Agent James Ohm ("Ohm") of the Wisconsin Department of Justice, Division of Narcotics Enforcement, submitted an affidavit in support of a warrant to search Spry's residence at 2107 Ogden Avenue in Superior, Wisconsin. In the affidavit, Ohm detailed his extensive background in the investigation of narcotics cases and stated that based on his experience, he knew that large scale narcotics traffickers maintained evidence of their activities at their residences. Ohm, in support of the 1998 search warrant, submitted to the state court judge the results of earlier searches of Spry's homes, which included the seizure of thirty-seven grams of methamphetamine, a quarter-pound of marijuana, nearly one and one-half pounds of psilocybin mushrooms, over $6,000 in cash, paraphernalia related to drug dilution, repackaging and redistribution, and various narcotics records. Ohm's affidavit also recited that confidential informants had reported to the Superior Police Department that Spry continued to traffic in controlled substances in the Duluth/ Superior area after the search of her residence and arrest in May of 1997 and that Spry was still distributing methamphetamine in the area as late as January of 1998. Based on Ohm's affidavit, a Douglas County judge issued the 1998 warrant, and the police searched Spry's residence on February 16, 1998. Police recovered 100 grams of marijuana, a number of empty syringes, a syringe filled with methamphetamine, an electronic scale, cellophane zip-lock bags, twenty-three grams of an unknown white-colored powder, and more than $3,000 in cash. On February 24, 1998, the police arrested Spry for possession of controlled substances.

On April 2, 1998, a federal grand jury in the Western District of Wisconsin returned an eight-count indictment against Spry. Count One of the indictment charged Spry with possession with intent to distribute ·methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Counts Two through Eight of the indictment are not involved in this appeal. On July 31, 1998, Spry moved to suppress the evidence obtained during the April 14, 1992, May 27, 1997, and February 16, 1998, searches of her various residences. On August 5, 1998, the district court declined to grant an evidentiary hearing on any of these motions, stating that Spry had failed to make "a substantial preliminary showing of any reckless or intentional omissions" on the part of the Government. On September 9, 1998, a magistrate judge issued a Report and Recommendation which: (1) reaffirmed the decision not to grant an evidentiary hearing; and (2) recommended that the suppression motions be denied. On September 18, 1998, the district judge entered an order adopting the magistrate's recommendations.

Spry pled guilty to Count One of the indictment on September 14, 1998. The district court determined that 2,067 grams of methamphetamine represented Spry's relevant conduct. The court determined that Spry's offense level was 33 and that she fell within criminal category I, placing her in a guideline range of 135 to 168 months. On November 23, 1998, the court sentenced Spry to 152 months imprisonment. Spry appeals.

## II. ISSUES

On appeal, we consider: (1) whether the district court correctly determined that the law did not require police officers, after obtaining the 1992 no-knock search warrant, to make an independent determination of the exigent circumstances at the time they executed the warrant; (2) whether the district court erred by finding that the police had relied in good faith on the 1997 warrant at the time of the search in May of 1997; (3) whether the district court erred by finding that probable cause existed to issue the 1998 warrant; and (4) whether the district court erred by finding

that Spry's prior drug dealings constituted relevant conduct for sentencing.

## III. DISCUSSION

### A. The Failure to Knock–and–Announce Before Executing the 1992 Warrant

■ Initially, Spry asks this Court to vacate her conviction and order the suppression of evidence discovered during the 1992 search of her residence in Duluth, Minnesota. Spry contends that even though the April 14, 1992, warrant authorized a no-knock entry, the executing police officers should have reevaluated the reasonableness of the no-knock approach before the time of entry. The trial court considered Spry's contention and determined that the law in this Circuit does not require officers executing a no-knock warrant to independently assess the reasonableness of the entry.

■ The Fourth Amendment incorporates the common law requirement that officers entering a dwelling must "knock on the door and announce their identity and purpose before attempting forcible entry." *Richards v. Wisconsin*, 520 U.S. 385, 387, 117 S.Ct. 1416, 1418, 137 L.Ed.2d 615 (1997) (citation omitted). However, no "rigid rule" exists requiring announcement in all circumstances. *United States v. Ramirez*, 523 U.S. 65, ——, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998). "[I]n order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.* (citation and internal quotation omitted).

In the case under consideration, a state judge in St. Louis County, Minnesota, issued the no-knock warrant on April 14, 1992, based on Officer Christensen's affidavit, in which he requested an unannounced entry into Spry's residence at 422 North 19th Avenue West in Duluth, Minnesota. Christensen stated that the unannounced entry was necessary to prevent the loss, destruction, or removal of evidence of drug trafficking and in order to protect the safety of the officers involved. The 1992 warrant authorized the officers assigned to the search to "enter without announcement of authority and purpose." Spry does not contest the trial court's finding that probable cause existed to issue the April, 1992, warrant, nor does she challenge the judge's determination that exigent circumstances existed at the time the no-knock warrant was issued; Spry only argues that the officers were obligated to reevaluate the reasonableness of the no-knock warrant at the time of entry on April 14, 1992.

"The practice of allowing magistrates to issue no-knock warrants seems entirely reasonable when sufficient cause to do so can be demonstrated ahead of time." *Richards*, 520 U.S. at 396, n. 7, 117 S.Ct. at 1422, n. 7. In fact, this Court previously held that an "officers' no-knock entry was permissible [if a defendant's] possession of firearms posed a threat to the safety of the officers." *United States v. Singer*, 943 F.2d 758, 763 (7th Cir.1991). However, we further held that "[i]f, during the intervening period between the warrant's issuance and execution, the police received reliable information that [the defendant] no longer possessed any firearms, then [the police] would have been required to reevaluate their plan to forcibly enter [the defendant's] home without first knocking and announcing." *Id.* The factual circumstance in *Singer* is inapposite to the case under consideration in that Spry was not at any time in the possession of firearms. Furthermore, Spry does not allege that the police received reliable information that the exigent circumstances, her possession of illegal narcotics, no longer existed immediately prior to the 1992 warrant's execution. Thus, we hold that the district court correctly determined that the law does not require officers, after obtaining a no-knock warrant, to make an independent determination of the exigent circumstances at the time of entry.

### B. Good Faith Reliance on the 1997 Warrant

 Spry next contends that because the police were unreasonable in their reliance on the search warrant issued on May 27, 1997, her conviction should be vacated and the evidence obtained during the 1997 search of her residence in Superior, Wisconsin, should be suppressed. Specifically, Spry contends that the officers' reliance on the 1997 warrant was unreasonable because the warrant affidavit lacked sufficient information to demonstrate that the CI who provided details of Spry's drug trafficking activities was reliable. The district court determined that there was insufficient evidence to support the state court's finding of probable cause, but that the police relied on the 1997 warrant in good faith.

 This Court reviews a district court's application of the good faith doctrine for clear error. *See United States v. Skinner*, 972 F.2d 171, 175, n. 3 (7th Cir. 1992) (citation omitted). Under the good faith doctrine, "evidence recovered during the execution of a facially-valid search warrant that is later invalidated by the courts is not always subject to suppression." *United States v. Sleet*, 54 F.3d 303, 307 (7th Cir.1995) (quoting *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984)). " '[S]uppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.' " *Sleet*, 54 F.3d at 307 (quoting *Leon*, 468 U.S. at 926, 104 S.Ct. at 3422).

Officer Maas of the Superior Police Department supported his 1997 warrant request with an affidavit which supplied the state judge with a variety of reliable information from several different sources. Officer Maas stated that a CI had advised the police that a third party planned to buy methamphetamine for the CI from an individual living in Superior. The affidavit stated that Superior Police set up surveillance on the third party, followed her, and observed her enter Spry's home where she remained for forty-five minutes. After the meeting at Spry's residence, the third party gave methamphetamine to the CI, who turned the methamphetamine over to police.[2] The CI reported that the third party had told her that she had bought the methamphetamine from "Sue" during her meeting at Spry's residence and that Sue had stated that she had an additional two ounces available for sale. The affidavit also recounted that a check of Spry's criminal history revealed that Spry had been arrested for possession of marijuana in Minnesota in 1992 and that Officer Shelly Johnson of the Duluth Police Department had received intelligence information from another CI that Spry was involved in dealing controlled substances in the Duluth/Superior area. Furthermore, Officer Maas had knowledge and experience in investigating criminal complaints, especially those involving narcotics. This evidence gave the police an objectively reasonable belief that probable cause existed. Furthermore, the issuing judge determined that sufficient probable cause existed to support the 1997 search warrant.

This Court has previously held that "in the ordinary case, a law enforcement officer 'cannot be expected to question' the magistrate's probable cause determination." *Sleet*, 54 F.3d at 307 (quoting *Illinois v. Krull*, 480 U.S. 340, 349, 107 S.Ct. 1160, 1167, 94 L.Ed.2d 364 (1987)). Because the officers could have "harbored an objectively reasonable belief in the existence of probable cause," *Sleet*, 54 F.3d at 307 (citation and internal quotation omitted), and thus relied on the 1997 warrant in good faith, suppression is not appropriate.

---

2. Police officers maintained surveillance over the narcotics transaction until the time the CI turned the methamphetamine over to police.

## C. Probable Cause to Issue the 1998 Warrant

Spry next asks that this Court vacate her conviction and order the suppression of the evidence discovered during the execution of the 1998 search warrant. Specifically, Spry argues that probable cause did not exist to issue the February 16, 1998, warrant because some of the information in the warrant affidavit was "stale" and the informants who provided information concerning her drug trafficking activities were not proven reliable.

 This Court reviews the district court's determination of probable cause *de novo*, although deference is given to the district court's findings of historical facts and inferences drawn from those facts. *See United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir.1997). When an affidavit relies on an informant's tip, the issuing judge must look at the "totality-of-the-circumstances" to determine whether probable cause exists to issue a search warrant. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

In reviewing a magistrate's issuance of a search warrant based on probable cause, the magistrate's decision will be upheld "so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing...." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). The probable cause determination "involves the application of law rather than an evaluation of factual evidence, [therefore] on review the appellate court is not limited to a determination of whether the district court's finding was clearly erroneous. It [appellate court] must independently review the sufficiency of the affidavit, *United States v. Minis*, 666 F.2d 134 (5th Cir.1982), recognizing that doubtful cases should be resolved in favor of upholding the warrant." *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir.1982) (citing *United States v. Allen*, 588 F.2d 1100 (5th Cir.), reh. denied 593 F.2d 709, *cert. denied sub nom. Perkins v. United States*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979)).

This court has stated that:

"[A] magistrate's determination of probable cause is to be 'given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.' "

*United States v. Pritchard,* 745 F.2d 1112, 1120 (7th Cir.1984) (quoting *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982)). *United States v. Griffin*, 827 F.2d 1108, 1111 (7th Cir.1987).

 Initially, Spry attacks the evidence uncovered in three earlier searches of her various residences in Wisconsin and Minnesota in 1988, 1992, and 1997 which Special Agent Ohm included in his affidavit in support of the search warrant issued on February 16, 1998. The 1998 warrant was issued by a state court judge in Douglas County, Wisconsin, in order for police to search Spry's residence at 2107 Ogden Avenue in Superior. The warrant affidavit provided that Ohm had been a police officer for more than twelve years and had spent ten years working for the Division of Narcotics Enforcement at the Wisconsin Department of Justice. It also provided that Ohm had been involved in narcotics investigations, had attended specialized training programs on the advanced investigation of complex narcotics cases, and that through his participation in controlled substance investigations, Ohm knew that large scale narcotics traffickers usually maintained large amounts of money, financial statements, contraband, and evidence inside their residences. The affidavit reviewed police reports demonstrating that drug activities continued at Spry's home on Ogden Avenue since her arrest in May

of 1997 and the results of the previous search of Spry's residence in 1997, which revealed 106 grams of marijuana, 37.2 grams of methamphetamine, 632.2 grams of psilocybin mushrooms, and $6,000 in cash, as well as various drug paraphernalia for diluting, repackaging, and redistributing controlled substances. The 1998 warrant affidavit also stated that Spry had failed to file a Wisconsin state tax return in 1997 or any other year, that Spry was arrested for possession of marijuana in 1992, that Spry was arrested for possession of marijuana and methamphetamine in 1988, and that numerous informants stated that Spry had continued to traffic controlled substances in the Superior/Duluth area after her arrest in 1997.

■ Nonetheless, Spry contends that all this evidence was too "stale" to support the 1998 warrant. This Court has held that the age of inculpatory information is only one factor that magistrates should consider in determining whether probable cause exists, and "[i]f other factors indicate that the information is reliable ... the magistrate should not hesitate to issue the warrant." *United States v. Pless*, 982 F.2d 1118, 1125–26 (7th Cir.1992) (quoting *United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir.1987)). "Passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity." *Pless*, 982 F.2d at 1126 (citing *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir.1991)). The evidence discovered during the searches of Spry's residences as well as the corroborating information from confidential informants that drug trafficking activity continued after Spry's arrest in May of 1997 revealed "ongoing continuous criminal activity" because every search of Spry's residence turned up substantially large amounts of illegal narcotics. Further, multiple confidential informants provided corroborating information that Spry's drug trafficking activity continued after Spry was arrested and released in 1997.

Spry also contends that Ohm's failure to corroborate the confidential informants' in-

formation, that Spry had continued to traffic narcotics after her arrest in 1997, invalidates the 1998 warrant. However, in *Pless*, the Court found that probable cause existed to issue a search warrant when *three* informants of unknown reliability provided information the police could corroborate. 982 F.2d at 1124–25. In the case under consideration, *multiple* informants provided information which the police were able to partially corroborate. Thus, neither the uncertainty of the reliability of the in formants, nor the age of the information in the warrant affidavit should give this Court cause to overrule and hold that the district court committed error in finding that probable cause existed to support the 1998 search warrant.

## D. Relevant Conduct for Sentencing

■ Spry next contends that the district court erred in finding that her prior drug dealings constituted relevant conduct under United States Sentencing Guideline Section 1B1.3 and that her case should be remanded to the district court for resentencing. Spry does not challenge the evidence of her prior narcotics transactions or the amount of drugs calculated.

■ This Court reviews for clear error the district court's determination that the defendant's actions constituted part of the same course of conduct as the counts of conviction. *See United States v. Townsend*, 73 F.3d 747, 751 (7th Cir.1996) (citation omitted). "Whether the transactions are part of the same course of conduct as the offense of conviction depends upon the similarity, regularity and temporal proximity of the incidents in question." *United States v. Cedano–Rojas*, 999 F.2d 1175, 1180 (7th Cir.1993) (citation omitted).

Spry argues that the district court erred in finding this "similarity, regularity and temporal proximity" because there was a fourteen-month lapse between two of the documented transactions, from October of 1994 until January of 1996. However, the district court determined that, despite cer-

tain time gaps, the activity was ongoing conduct that was part of "a continuing scheme." The trial judge determined that Spry acted continuously as a drug dealer from as early as 1990 until the time of her ultimate apprehension in February of 1998.

This Court has held that "[a]lthough temporal proximity is a significant consideration in finding a course of conduct, a lapse of time between the prior conduct and the charged offense is not necessarily dispositive of the issue." *Cedano–Rojas*, 999 F.2d at 1180 (citation omitted). "[F]inding a course of conduct in the absence of regularity and temporal proximity may not be clearly erroneous when there is a 'stronger showing' of similarity between the offense of conviction and the uncharged conduct." *Id.* at 1180 (quotation omitted). We have previously held that "[i]n considering the similarity of the conduct in question, a court must look to the identity of the participants and their roles ..., as well as the nature, structure and location of the allegedly related transactions, to determine whether the transactions are sufficiently related for purposes of Section 1B1.3(a)(2)." *Id.* In the case under consideration, there is strong evidence of similarity in the identity and roles of the participants and the nature and structure of the various narcotics transactions. From as early as 1990, Spry acted as a drug dealer in the Duluth/Superior area. In 1990 or 1991, Spry recruited an associate, Sherri Medberry ("Medberry"), to act as a distributor for her drug business. According to the record, Medberry sold an ounce of methamphetamine per month for Spry between August of 1991 and July of 1992 and again between August of 1993 and October of 1994. Medberry then began selling three ounces per month for Spry beginning in May of 1995 and continued to do so for the following fourteen months. Also, Medberry sold ten ounces per month for Spry for four months

beginning in August of 1996. Another agent, Debra Upton, had a similar arrangement with Spry and sold 480 grams of methamphetamine between the fall of 1996 and Christmas of 1997. The continuity of Spry's sale arrangements with her two associates leads us to conclude that "the identity of the participants and their roles ..., as well as the nature, structure and location of the allegedly related transactions" were sufficiently similar for the transactions to be considered related under Section 1B1.3(a)(2).. Because the district court correctly found similarity, regularity, and temporal proximity between the incidents in question, we hold that Spry's prior drug dealings constituted relevant conduct for sentencing.

## IV. CONCLUSION

We hold that the police were not required to make an independent assessment of the exigent circumstances at the time of entry to determine the reasonableness of relying on the April 14, 1992, no-knock warrant, and the district court did not err by finding that the police relied on the May 27, 1997, warrant in good faith. Furthermore, the district court did not err by finding that probable cause existed to issue the February 16, 1998, search warrant and that Spry's prior drug dealings constituted relevant conduct under the Sentencing Guidelines.

AFFIRMED.