# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1758

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TERASENCE STEVEN MITTEN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 08-CR-40049—**Michael M. Mihm**, *Judge*.

ARGUED NOVEMBER 13, 2009—DECIDED JANUARY 20, 2010

Before KANNE and TINDER, *Circuit Judges*, and
GRIESBACH, *District Judge*.[1]

GRIESBACH, *District Judge*. On July 1, 2008, police
officers executed a search warrant on Apartment H14 of
the Maple Ridge apartment complex in Rock Island,
Illinois. The apartment was leased by the girlfriend of

---

[1] Hon. William C. Griesbach, District Judge for the Eastern
District of Wisconsin, sitting by designation.

defendant Terasence Mitten, and when the officers knocked on the door and announced their purpose for being there, Mitten attempted to barricade the door. The officers gained entry and found approximately 20 grams of crack cocaine and a loaded handgun.

Mitten was charged in a two-count indictment with possession of five grams or more of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B), and unlawful possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). After unsuccessfully moving to suppress the evidence seized from the apartment, Mitten entered a conditional guilty plea to the drug charge, reserving his right to appeal the district court's order denying his motion to suppress, and proceeded to trial on the firearm charge. A jury found him guilty, and the district court sentenced him to a total of fifteen years in prison—120 months on the drug charge and 60 months, consecutive, on the firearm charge. On appeal, Mitten contends that (1) the district court erred in denying his motion to suppress; (2) the evidence was insufficient to support his conviction on the firearms charge; and (3) the district court erred in imposing a consecutive sentence pursuant to 18 U.S.C. § 924(c)(1)(A). We reject all three challenges and affirm both his conviction and the sentence.

I.

Mitten first claims that the district court erred in denying his motion to suppress the evidence seized in

his girlfriend's apartment. In its decision denying the motion, the district court agreed with Mitten that the affidavit submitted in support of the warrant was insufficient to establish probable cause and therefore held the warrant invalid, a holding the government does not here contest. The district court went on to conclude, however, that the evidence seized by police was admissible under the good faith exception to the exclusionary rule adopted by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984). Mitten argues that the evidence obtained under the invalid warrant should have been excluded and that the district court erred in concluding that the good faith exception applied under the facts of this case.

The exclusionary rule is intended to vindicate rights guaranteed by the Fourth Amendment by excluding consideration at trial of illegally obtained evidence. The exclusion of relevant and highly probative evidence, however, interferes with the criminal justice system's truth-finding function, and thus application of the rule can permit guilty defendants to go free. *Stone v. Powell*, 428 U.S. 465, 490 (1976). In light of the substantial societal costs of the rule, and recognizing that the primary, if not sole, justification for the exclusionary rule is the deterrence of police misconduct, the Supreme Court held in *Leon* that suppression of evidence is not an appropriate remedy when the officers who obtained the evidence did so in good faith reliance upon a facially valid warrant issued by a magistrate or judge. 468 U.S. at 922 ("We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search

warrant cannot justify the substantial costs of exclusion."). It is that exception that the district court found applicable here. It concluded that even though the warrant was invalid, the officers acted in good faith reliance upon its validity.

This Court reviews the district court's ultimate legal conclusion that the officer reasonably relied upon a warrant later found to be invalid under the *de novo* standard of review. *United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002). In deciding whether an officer was acting in good faith, the fact that the officer sought to obtain a warrant is prima facie evidence that he was acting in good faith. *United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009) (citing *Leon*, 468 U.S. at 921 n. 21). The presumption of good faith that thereby arises, however, can be rebutted if the defendant shows that "(1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable." *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008).

Mitten does not argue that the issuing judge abandoned his detached and neutral role and merely rubber-stamped the warrant; nor does he argue that Officer Eddie Connelly, the officer who obtained the warrant, was reckless or dishonest in preparing the supporting affidavit. Instead, he argues that Officer Connelly's affidavit was so clearly deficient that no officer could reasonably rely upon it as authorization to search

Apartment H14.[2] Mitten contends that the affidavit was essentially "bare bones" and rested upon conclusory, uncorroborated, and stale accounts of criminal activity from two confidential informants whose reliability was never established. "Bare bones" affidavits such as Officer Connelly's, Mitten argues, "should not be protected by the good faith exception." Brief of Defendant-Appellant at 27.

Though not a model of clarity or draftsmanship, we do not accept Mitten's characterization of Officer Connelly's six-and-a-half-page affidavit as "bare bones." Nor is it based solely upon stale accounts from confidential informants lacking all indicia of reliability. Officer Connelly's recitation of the facts supporting his application for a search warrant for the apartment of Mitten's girlfriend begins with a traffic stop on November 19, 2007, more than seven months before the search. Mitten and Robert J. White were arrested after small amounts of marijuana, powder cocaine and five individually wrapped crack cocaine rocks were found in a car they were driving. The car was owned by a local auto dealer, and Mitten had placed $1,000 cash down on the car sometime earlier. Mitten took responsibility for the drugs and was subsequently placed on probation. At that time, Mitten claimed that both he and White lived with Mitten's mother in Moline, Illinois.

---

[2] The same affidavit was used to obtain a search warrant for Mitten's mother's house at 733 13th Street in the City of Moline. The issuance of that warrant is not at issue in this appeal.

The affidavit next recites that Officer Connelly was told by a confidential source (CS-1), who admitted that he had been dealing crack cocaine for approximately three months, that he purchases all of his crack cocaine from the same drug dealer at Apartment H14 of the Maple Ridge apartment complex. CS-1 told Officer Connelly that the drug dealer drove a tan Buick Park Avenue, which matched the description of one of the vehicles Mitten had been seen driving by surveillance officers. When shown a picture of Mitten, CS-1 positively identified him as the person from whom he had been buying crack at the Maple Ridge apartment. Officer Connelly noted that Krystal Phillips was listed as the renter of Apartment H14, and the utilities for that address were billed to her name.

A second confidential source (CS-2), who admitted he had been dealing narcotics for over ten years, told police that in May 2008 he purchased a distribution amount of crack cocaine in an apartment located in the H building of the Maple Ridge apartment complex where a black female known as Krystal lives. CS-2, whom Officer Connelly stated had provided truthful and accurate information that led to at least one additional arrest in the past, also stated that White was present during the transaction.

Officer Connelly's affidavit goes on to recount that Mitten and White were again stopped by police on May 29, 2008, while driving a tan 1994 Buick Park Avenue, which Mitten claimed to own. White was arrested on an outstanding warrant for Aggravated Fleeing and

Eluding, and in a search of the vehicle incident to the arrest, police found a small amount of cannabis and $13,235 in U.S. currency, most of which was found under the front passenger seat, but $2,315 of which was found in Mitten's possession. Police found twenty to thirty mini "zip-loc" baggies on White. Mitten claimed he was on his way to Chicago, but was headed toward the Maple Ridge apartments because he intended to stop and say goodbye to his girlfriend Krystal Phillips first. Mitten acknowledged that the small amount of cannabis was his and subsequently admitted that he sold cannabis. Mitten and White claimed that the mini "zip-loc" baggies found on White were for the sale of nickel bags, or non-felony amounts, of cannabis. With respect to the large amount of money found under the passenger seat, Mitten stated that White placed it there when he got in the vehicle, but Mitten apparently denied any further knowledge about where the money came from because it was "none of his business." White was apparently unaware of the total amount of money found in the vehicle, and stated he received $4,000 from his father and $4,500 from his mother to buy a car. When police later telephoned them, however, both of White's parents denied they had given him such an amount of money. Officer Connelly also noted in his affidavit that based on his own experience as a drug investigator, mini "zip-loc" baggies such as those found in White's possession are consistent with the sale of crack cocaine or heroin, not cannabis.

The affidavit describes a search of a trash bag left outside of Mitten's mother's house in Moline, where

Mitten claimed he and White lived, on June 3, 2008. Police found a letter addressed to Mitten from his auto insurance carrier and a single joint containing cannabis among the items of trash.

Finally, Officer Connelly recounted police surveillance reports of Mitten on the evening of June 12, 2008, as he was driving a white 1999 Buick Park Avenue registered to Krystal Phillips with White as a passenger. Police followed Mitten as he drove in and around Moline in the area of his mother's house and then in the vicinity of the Maple Ridge apartments in Rock Island. The routes taken by Mitten and the number and nature of stops he made along the way led the officers to conclude Mitten was doing countersurveillance to avoid being detected by police.

Although the affidavit recites additional facts, they add little if any weight to the probable cause determination. From what we have recounted, however, it should be clear that the warrant was not "bare bones." As the district judge noted, it clearly established a pattern of drug-related activity involving Mitten. In fact, Officer Connelly's affidavit contains evidence that Mitten admitted as much during the May 29 traffic stop, claiming he sold small amounts of marijuana. Of course, the other evidence described in the affidavit supports the inference that Mitten and White were selling more than small amounts of marijuana. The mini "zip-loc" baggies found on White during the May 29 traffic stop were consistent with crack or heroin sales, not marijuana, and the amount of money found in their possession suggested

more than occasional sales. Considered together with the fact that at the November 19, 2007 stop, some six months earlier, five individually wrapped crack cocaine rocks were found on Mitten's person and the statements of the confidential sources, the totality of evidence recounted strongly suggests that they were crack dealers.[3]

The district court also noted, however, that there were problems with the affidavit. There was no indication that CS-1 had previously provided reliable information to police, and the affidavit was silent as to when CS-1 made his crack purchases from Mitten at the Maple Ridge apartment. Although CS-2 is said to have provided truthful and accurate information in the past that led to one additional arrest, the affidavit does not describe the nature of the information that was provided, or say how long ago it was provided. CS-2 did state that the transaction at the Maple Ridge complex occurred during the month of May 2008, but does not give a specific date. CS-2 also failed to specify the apartment number where the transaction occurred, instead describing it as an apartment in the H building of the Maple Ridge complex where a woman named Krystal lived. In the view of the district court, this information was insufficient to establish a connection between evidence of criminal drug dealing by Mitten and White, on the one hand, and Apartment H14 of the Maple Ridge

---

[3] The district judge also observed that "when people are carrying around multiple individually wrapped rocks of crack, they're normally for sale."

complex on the other. The district court further concluded, however, that the affidavit was not so lacking that Officer Connelly's belief that it established probable cause was entirely unreasonable.

We agree with the district court that Mitten failed to rebut the presumption that Officer Connelly relied on the warrant in good faith. The deficiencies noted in the affidavit are not so egregious as to render his belief in the warrant's validity unreasonable. Mitten argues that Connelly's affidavit recites only two instances in which drug dealing is alleged to have taken place at Phillips' apartment, and that both are based upon information provided by two separate confidential informants "whose conclusory accounts of criminal activity at the premises are wholly uncorroborated, and whose reliability, veracity and basis for knowledge are unestablished." Brief of Defendant-Appellant at 24. But this is not true. Although only two confidential informants provided information about drug dealing taking place at Phillips' apartment, the information was about more than two occurrences. CS-1 stated that he made all of his crack purchases over the three-month period he was dealing crack at Apartment H14 at the Maple Ridge Apartments. He positively identified Mitten as his source from a photograph, and described the kind of car he had seen Mitten driving. CS-2 likewise stated he had purchased a distribution quantity of crack from an apartment in Building H sometime during the month of May 2008. The additional facts that a woman named Krystal was the renter of the apartment and that White was present during the transaction are sufficient to give rise to a reasonable inference that this transaction also took place in Apartment H14.

It is true that the affidavit lacks any information about CS-1's history of providing truthful information, and the one instance cited in regard to CS-2 is vague. In applying for search warrants, however, police are not limited to relying only on informants with proven track records of providing truthful information. Past performance is one way of establishing the veracity or reliability of an informant, but it is not the only way. The reliability or veracity of an informant in a particular case can also be shown by corroboration of the information he provides through independent police investigation. *Illinois v. Gates*, 462 U.S. 213, 241 (1983). Indeed, *Gates* held that even information from a single anonymous informant can be corroborated to the degree needed to establish probable cause for the issuance of a search warrant. Here, there was not one informant who claimed to have purchased drugs out of Mitten's girlfriend's apartment, but two, and neither was anonymous; police knew their identities. Each informant's statement that he purchased crack at the apartment generally corroborated the other's, and both in turn were corroborated, at least in part and in general, by the additional information independently obtained by police that indicated that Mitten and White were involved on an ongoing basis with distributing drugs, and that Mitten had a close relationship with Phillips. *See United States v. Wiley*, 475 F.3d 908, 916-17 (7th Cir. 2007) (holding that notwithstanding absence of statement attesting to credibility of informant, general corroboration by other information, including information from separate informant, was sufficient to establish probable cause.).

It is also noteworthy that the statement of each informant appears to have been contrary to his penal interests, at least on the surface. In effect, each admitted that he was not simply a crack user, but a crack dealer, a serious crime under both state and federal law. Statements against penal interest have also been viewed as carrying some indicia of reliability:

> Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct. Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another. But here the informant's admission that over a long period and currently he had been buying illicit liquor on certain premises, itself and without more, implicated that property and furnished probable cause to search.

*United States v. Harris*, 403 U.S. 573, 583-84 (1971). To be sure, it is probable that both informants in this case provided their information after they had been arrested for selling crack and were motivated by a desire to lessen the consequences they would likely suffer for their own crimes. That is almost always the case in drug investigations, but it does not make the information they provide inherently unreliable. *See United States v. Olson*, 408 F.3d 366, 371 (7th Cir. 2005) ("A motive to curry favor, however, does not necessarily render an

informant unreliable. Indeed, even informants 'attempt[ing] to strike a bargain with the police [have] a strong incentive to provide accurate and specific information rather than false information about [a defendant's] illegal activity.'") (quoting *Koerth*, 312 F.3d at 870). The sought-after reward from law enforcement in such cases is generally contingent upon the information provided by such an informant being accurate and useful.

Finally, the fact that each informant claimed to have purchased the crack himself describes the basis for his knowledge, i.e., personal observation. Though light on details, neither source's account can be accurately characterized as wholly conclusory, that is, consisting of a bare conclusion with no factual basis. *See Gates*, 462 U.S. at 239. Implicit, at least inferentially, in Officer Connelly's affidavit is the assertion that each of these experienced crack dealers reported to a police officer that he personally went to Apartment H14 where he purchased a significant quantity of a substance he recognized as crack cocaine. Mitten's statement to police during the May 29 traffic stop that he was on his way to his girlfriend Phillips' apartment, and the police surveillance reports stating that he was seen driving Phillips' car show the close connection between the two that, together with the informants' accounts, makes probable the notion that Mitten and White had sold crack out of Phillips' apartment.

Perhaps the most serious deficiency in the affidavit submitted by Officer Connelly is the age of the information, especially the information relating to Apartment

¶14. It is not enough to establish probable cause that the apartment at one time contained contraband or evidence of a crime. Probable cause to search, except in the case of anticipatory search warrants, exists "only if it is established that certain identifiable objects are probably connected with certain criminal activity and are probably to be found at the present time in a certain identifiable place." 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.7(a) at 371 (4th ed. 2004). Officer Connelly obtained the warrant on June 27, 2008. Yet, there was no date given for when CS-1 purchased crack out of the apartment, and CS-2 reported only one purchase on an unspecified date in May. The most recent information set forth in the affidavit consisted of the June 12, 2008, report that Mitten and White seemed to be conducting countersurveillance as they drove in the area of the Maple Ridge apartment complex in Rock Island and Mitten's mother's house in Moline. Mitten argues that the information contained in Officer Connelly's affidavit, even if sufficient to establish probable cause that crack was previously sold out of Phillips' apartment, was too stale to support a finding of probable cause that the evidence sought would likely be found there on June 27, 2008, when the warrant was issued, or July 1, 2008, when it was finally executed.

Even this deficiency, however, does not convince us that Officer Connelly's reliance on the warrant was unreasonable. As noted above, the evidence recounted in the affidavit indicates an ongoing pattern of drug dealing by Mitten and White. It is well established that the "[p]assage of time is less critical when the affidavit refers to facts that

indicate ongoing continuous criminal activity." *United States v. Pless*, 982 F.2d 1118, 1125-26 (7th Cir. 1992); *see also United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) ("Indeed, at least one circuit has recognized that probable cause may be found 'several weeks, if not months,' after 'the last reported instance of suspect [drug-trafficking] activity.'") (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)).

It is in this respect that this case differs from *United States v. Owens*, 387 F.3d 607 (7th Cir. 2004), a case Mitten cites in support of his argument that the evidence was too stale to support a finding of probable cause. In *Owens* the Court held that an affidavit that merely stated that three months earlier an informant had purchased an unspecified amount of crack cocaine from the defendant at a house believed to be his residence was insufficient to support the warrant that was issued. The Court found the affidavit so inadequate that the good faith exception could not even be applied to save the search because the officers who conducted the search could not have reasonably believed it was valid. *Id.* at 608. Unlike this case, however, there was no evidence in *Owens* that the sale was anything other than an isolated occurrence; there was no evidence of ongoing criminal activity. Instead, this case is more like *United States v. Spry*, 190 F.3d 829 (7th Cir. 1999), where the Court upheld a warrant issued in February 1998 based on an affidavit recounting evidence seized from the defendant's home under a May 1997 warrant, together with reports from multiple informants that the defendant continued to traffic in drugs following her 1997 arrest. "[N]either the uncertainty of the reliability

of the informants, nor the age of the information in the warrant affidavit," the Court concluded, "should give this Court cause to overrule and hold that the district court committed error in finding that probable cause existed to support the 1998 search warrant." *Id.* at 836.

In this case, of course, the issue of the warrant's validity is not before us. The government has not challenged the district court's determination that the state judge who issued the warrant lacked "a substantial basis for concluding that probable cause existed," *Gates*, 462 U.S. at 238-39 (internal quotes and brackets excluded), and we see no reason to disturb that ruling. The issue before us is whether the affidavit was so lacking in probable cause that Officer Connelly could not have believed the warrant valid. For the reasons explained above, we hold that it was not.[4] We therefore affirm the district court's order denying Mitten's motion to suppress.

## II.

As noted above, following the district court's denial of his motion to suppress, Mitten entered a guilty plea to the crack cocaine charge and proceeded to trial on the

---

[4] It is also noteworthy that Officer Connelly sought and obtained the approval of the Rock Island County Assistant State's Attorney before presenting his warrant request to the state judge who issued it. *See United States v. Merritt*, 361 F.3d 1005, 1012 (7th Cir. 2004) ("Agent Vergon's consultation with the AUSA particularly supports the finding that his reliance upon the warrant was objectively reasonable."), *vacated on other grounds*, 543 U.S. 1099 (2005).

charge that he had possessed a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). The jury returned a verdict of guilty, and Mitten claims the evidence was insufficient to support the verdict. He contends that the evidence adduced at trial was insufficient to establish beyond a reasonable doubt that he possessed a firearm "in furtherance" of his drug trafficking. The mere fact that a gun was found in the apartment, he argues, is insufficient to prove that he possessed a firearm in furtherance of his drug trafficking crime.

Mitten has a heavy burden in seeking to overturn a jury's verdict. "A defendant attacking the sufficiency of the evidence used to convict him faces a nearly insurmountable hurdle." *United States v. Morris*, 576 F.3d 661, 665-66 (7th Cir. 2009) (internal quotes and citations omitted). We view the facts in the light most favorable to the verdict, *United States v. Calabrese*, 572 F.3d 362, 364 (7th Cir. 2009), and will reverse only if no rational juror could have found guilt beyond a reasonable doubt. *Morris*, 576 F.3d at 666 (citations omitted). Mitten has not met his burden here.

At the outset, we agree with Mitten that the mere presence of a firearm in a dwelling where drugs have been sold is insufficient to prove the "in furtherance" element of Section 924(c). This Court has repeatedly held that "there must be a showing of some nexus between the firearm and the drug selling operation." *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005); *see also United States v. Vaughn*, 585 F.3d 1024, 1029 (7th Cir. 2009); *United States v. Fouse*, 578 F.3d 643, 650-51 (7th Cir.

2009). We recognize that "a possessed gun can forward a drug-trafficking offense by providing the dealer, his stash or his territory with protection." *Duran*, 407 F.3d at 480 (citing *United States v. Castillo*, 406 F.3d 806, 814-18 (7th Cir. 2005); *United States v. Luciano*, 329 F.3d 1, 6 (1st Cir. 2003)). On the other hand, it is important to distinguish between the type of possession targeted by the statute and the " 'innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard.' " *Duran*, 407 F.3d at 840 (quoting *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001)). To aid in distinguishing between the criminal "possession-in-furtherance" covered by Section 924(c) and the innocent possession that falls outside its scope, the *Duran* Court suggested consideration of a series of factors set out by the Fifth Circuit in *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir.), *modified on denial of rehearing*, 226 F.3d 651 (5th Cir. 2000). They include "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Duran*, 407 F.3d at 480 (quoting *Ceballos-Torres*, 218 F.3d at 414-15). Ultimately, common sense must be the guide. *Duran*, 407 F.3d at 480.

Based on our consideration of the *Ceballos-Torres* factors here, we conclude that the evidence was sufficient to support the verdict. The evidence established that Mitten had been dealing crack cocaine, which has long been recognized as a dangerous pursuit often requiring firearms protection. The firearm found in the

apartment was a 9mm handgun which is easily concealed and transported. The gun was located on the top shelf of a closet about five feet down a hallway from more than $6,000 worth of drugs, additional cash, and scales. It was loaded with a round in the chamber. Police found a plastic Pepsi bottle with a concealed compartment on the same shelf as the gun and a cigar box containing $176 on the second shelf. Finally, Mitten possessed the weapon illegally. The fact that the firearm was not stolen is the only *Duran* factor that favors Mitten. The absence of this single factor, however, is hardly a basis for overturning the jury's verdict.

Mitten argues that the evidence is nevertheless insufficient because "no testimony was presented that [he] ever sold drugs from the apartment, or that the handgun was readily accessible to him, or that he ever possessed the handgun during any drug transaction." Brief of Defendant-Appellant at 33. He also points to his post-arrest explanation for why he had the gun. Mitten told police that he had the gun at the apartment because Rock-Island's citizens did not like people from Chicago and that he was having problems with a particular person. *Id.*

Mitten's argument is unconvincing. His drug trafficking crime was possession of crack cocaine with intent to distribute. It is in furtherance of that crime that the government charged him with possession of a firearm. Thus, the fact that the government presented no testimony at trial that he ever sold drugs from the apartment or carried the gun with him during actual sales is irrelevant. There is no requirement that a drug dealer have the gun

in his possession during uncharged sales in order for his possession of a firearm to be in furtherance of the crime of possession of crack with intent to distribute. DEA Special Agent Jon Johnson testified that "[d]rug traffickers will commonly possess firearms to protect their product, to protect their drugs, to protect their cash, to protect their life and even to protect their turf." Even if the jury heard no evidence that Mitten sold drugs at the apartment, it did know that more than $6,000 worth of drugs and additional money was in the apartment on the day the warrant was executed. Drug dealers deal with people who are often desperate and violent. They cannot rely upon local law enforcement to protect their illegal product or profits. In light of these facts, it was reasonable for the jury to infer that Mitten's possession of the gun was intended for the protection of his money and his stash. And, of course, the jury was not required to accept Mitten's post-arrest explanation as to why he had the gun. There were ample grounds to question his credibility.

Mitten also cites *United States v. Iiland*, 254 F.3d 1264 (10th Cir. 2001), in support of his argument that the evidence was insufficient to prove the "in furtherance" element of Section 924(c). In *Iiland* the Tenth Circuit reversed a Section 924(c) conviction of a drug dealer that was based upon a firearm that was found in his apartment during a search. In *Iiland*, however, the defendant's drugs were found in a separate storage unit, and the government offered no evidence the drugs and gun were ever kept at the same place or that the gun was ever accessible when the defendant conducted a drug transaction. *Id.* at 1274. Here, by contrast, the loaded gun was

found in the same apartment and in close proximity to drugs and money. In fact, it was found in a closet alongside a Pepsi bottle with a hidden compartment and above another shelf where a cigar box containing $176 was found. The jury here had sufficient evidence to conclude that the gun was possessed in furtherance of the drug trafficking crime, and its verdict cannot be disturbed.

III.

Mitten's final claim is that the district court erred in construing 18 U.S.C. § 924(c) as mandating a consecutive sentence of at least five years under the circumstances of this case. Relying on the Second Circuit's decision in *United States v. Whitley*, 529 F.3d 150 (2008), and that circuit's even more recent decision in *United States v. Williams*, 558 F.3d 166 (2d Cir. 2009), Mitten argues that the fact that his underlying drug trafficking crime carried a minimum sentence of ten years exempts him from the consecutive five-year sentence mandated by Section 924(c)(1)(A)(i) where the minimum sentence for the underlying crime is less.[5]

---

[5] Possession of five grams or more of crack cocaine with intent to distribute carries a minimum sentence of 5 years imprisonment and a maximum of 40 years if the defendant has not previously been convicted of a felony drug offense. Because Mitten had previously been convicted of a felony drug offense, he faced a minimum sentence of 10 years and a maximum of life. 21 U.S.C. § 841(b)(1)(B).

As Mitten acknowledges, this Court rejected *Whitley*'s interpretation of Section 924(c) in *United States v. Easter*, 553 F.3d 519 (7th Cir. 2009), as has every other circuit that has addressed the issue. *See United States v. Segarra*, 582 F.3d 1269 (11th Cir. 2009) (rejecting claim that consecutive sentences for convictions of §§ 841 and 924(c) unlawful); *United States v. Parker*, 549 F.3d 5 (1st Cir. 2008) (affirming consecutive sentences for convictions of §§ 841, 846 and 924(c)); *United States v. Jolivette*, 257 F.3d 581 (6th Cir. 2001) (affirming consecutive sentences for armed bank robbery and § 924(c) convictions); *United States v. Studifin*, 240 F.3d 415 (4th Cir. 2001) (affirming consecutive sentences for robbery and § 924(c)); *United States v. Alaniz*, 235 F.3d 386 (8th Cir. 2000) (affirming consecutive sentences for convictions of §§ 841 and 924(c)).

We decline Mitten's invitation to revisit an issue this Court decided only a year ago. Not only was the Second Circuit's interpretation of Section 924(c) in *Whitley* fully addressed by a three-judge panel of this Court in *Easter*, but a majority of the active judges also voted to deny a petition for a rehearing of the case *en banc*. 7th Cir. R. 40(e). For the reasons set forth by this Court in *Easter*, we hold that Mitten was not exempt from the consecutive term of imprisonment mandated by Section 924(c). The district court correctly concluded that a sentence of at least five years, consecutive to Mitten's drug trafficking crime, was mandated.

## IV.

In conclusion, we hold that Officer Connelly's affidavit was not so lacking in probable cause as to make reliance on it unreasonable. There was also sufficient evidence to support the jury's verdict on the Section 924(c) charge. Finally, Mitten's argument that the minimum ten-year sentence to which he was subject on the underlying drug trafficking crime rendered him exempt from Section 924(c)'s consecutive sentence scheme is foreclosed by this Court's prior holding in *Easter*. Accordingly, his conviction and sentence are AFFIRMED.