SHEDD, Circuit Judge,
concurring in part and dissenting in part:
Although I concur in almost all of the majority’s opinion, I respectfully dissent from its conclusion that the district court erred in applying the murder cross-reference when determining Sigmund James’s sentence.
I agree with the majority that the framework of United States v. Horton, 693 F.3d 463 (4th Cir.2012), governs our analysis and that we review the district court’s factual findings for clear error and its legal determinations de novo, id. at 474. I further agree with the majority that the district court did not clearly err in finding that James murdered Vance Davis.[1]
I disagree with the majority, however, on whether the murder cross-reference can be applied based on Davis’s murder. The evidence in the record provides a sufficient connection between Davis’s murder and the drug conspiracy for the murder to be considered relevant conduct under United States Sentencing Guideline § 1B1.3 (a)(1)(A).
First, it is important to clarify exactly what the record was that the district court was permitted to use in sentencing James and that we can consider here. The majority seems to believe that the district court could not consider the Presentence Report’s (“PSR”) evidence about why James killed Davis. See ante at 331-32. Such a position is incorrect.
At sentencing, James at first objected to the entire PSR, and when prompted for more specific objections, he objected to all of paragraphs 62, 63, 64, 65, and 66 of the PSR, which described how and why James killed Vance Davis. J.A. 959, 1189-91. What followed this objection leaves no doubt that James objected to the fact that he killed Davis, not why he killed Davis.
*334 After the objection, the district court took testimony from four witnesses— Orangeburg police Captain Ronda Bam-berg, Robert Jones, Avery Haigler, and James — regarding Davis’s murder. J.A. 972-1089. The testimony of the witnesses and arguments of counsel at the sentencing hearing focused only on whether James killed Davis, not whether that killing was relevant to the drug conspiracy.[2] See J.A. 972-1093. After having heard and considered all of this evidence, the district court overruled James’s objections to these paragraphs, making an explicit finding of fact that James killed Davis. J.A. 1101; see United States v. Morgan, 942 F.2d 243, 245 (4th Cir.1991) (holding that a district court may comply with Federal Rule of Criminal Procedure 32(c)(3)(D) either by separately reciting its findings or expressly adopting the recommendations of the PSR). Confirming that James objected only to the question of whether he committed the murder, after the district court made this finding, James’s counsel stated “None, your Honor, no,” when asked if he had any further objections. J.A. 1101. Based on the testimony, arguments, and even James’s allocution,[3] James’s objection to these paragraphs in the PSR was based on the fact that he allegedly did not kill Davis, not why he killed Davis. James could have argued that, even if he did kill Davis, he did so for a reason unrelated to the drug conspiracy, but James never made that argument.
Because the district court addressed James’s specific objection, it did not need to make an explicit finding about the murder’s relevance to the drug conspiracy. On this point, the district court was entitled to rely on the PSR’s evidence about why James killed Davis. Having overruled James’s objection to the fact of the killing, the district court could, as it did,[4] adopt and rely upon the other facts in the PSR, including from the paragraphs to which James had objected on another basis, to use in sentencing James. J.A. 1101-03.
Having clarified what evidence is in the record and can be considered when determining James’s sentence, the next issue is whether that evidence sufficiently connects Davis’s murder with the drug conspiracy. The answer is unequivocally yes.
Most obviously connecting the murder with the drug conspiracy are two statements from the PSR. First, paragraph 63 states that Lenell Walker told special agents from the Drug Enforcement Agency that James told him (Walker) that he (James) killed Davis because Davis had stolen drugs from him (James). J.A. 1190. Second, paragraph 64 states that James told Jones that Davis had broken into his (James’s) home and stolen cocaine, prompting Jones to tell James to resolve the problem or Jones would not provide James any more cocaine. J.A. 1190-91. These two pieces of evidence leave no doubt that the district court could have *335 found that James shot Davis in relation to the drug conspiracy.
No other evidence in the PSR or from the sentencing hearing contradicts these statements about why James killed Davis such that the district court could not have found that James’s motivation for killing Davis was drug-related. The other evidence shows the following: James killed Davis after Davis had attempted to break into and rob James’s mother’s trailer, J.A. 1010; James was living in his mother’s trailer at that time, J.A. 1010; James had engaged in drug transactions at that trailer, J.A. 1043; and James was deeply engaged in a drug conspiracy at this time, ante at 382 n. 3. None of this is inconsistent with the two statements from the PSR about why James killed Davis.[5]
Although the majority focuses on the “inconsistent” testimony about whether Davis attempted to rob James because of his drug-related activities or simply attempted to rob James’s mother, ante at 331, the majority’s analysis belies its claim of any inconsistency. In fact, the majority’s analysis indicates that it believes that the testimony clearly supports the conclusion that James killed Davis out of anger that Davis tried to rob James’s mother. See ante at 331-32. Yet the testimony is not nearly so clear. James was undoubtedly upset about the attempted robbery, but neither Jones nor Haigler testified at the hearing about specifically why James was upset. Their statements about the trailer belonging to James’s mother are more descriptive of where the attempted robbery took place than of why James was upset. See J.A. 1010-12, 1039-42. Their testimony is certainly, at the very least, not dispositive that the motive for the killing was that Davis tried to rob James’s mother. Furthermore, to the extent that this evidence is inconsistent with the PSR, the district court could choose to rely on the evidence from the PSR about the motive for the killing rather than the testimony at the sentencing hearing. This testimony therefore provides little support for the majority’s conclusion.
Taken together, the evidence overwhelmingly supports the conclusion that the murder was relevant to the drug conspiracy. To conclude that James killed Davis in connection with the drug conspiracy — whether because James believed Davis stole drugs from him or because James needed to “send a message” that he would not tolerate such threats against him — is not difficult. In reality, it is the most logical conclusion when considering the evidence in the record and taking into account what common knowledge tells us about the connection between drug dealers and gun violence. See United States v. Mitten, 592 F.3d 767, 777-78 (7th Cir.2010) (recognizing that “[djrug traffickers will commonly possess firearms to protect their product, to protect their drugs, to protect their cash, to protect their life and even to protect their turf” (alteration in original)); cf. United States v. Grogins, 163 F.3d 795, 799 (4th Cir.1998) (noting that “the background fact that the connection between illegal drug operations and guns in our society is a tight one”).
This conclusion thus does not “turn the relevant conduct analysis into an impermissible conduit for punishing uncharged and unproven conduct,” as the majority fears. Ante at 332. Instead, this conclusion ensures that James receives the most just punishment that reflects all of his actions relating to his crimes of conviction. Therefore, I believe the district court did *336 not err by finding that the murder was relevant to the drug conspiracy and thus properly applied the murder cross-reference, and I respectfully dissent from the majority’s contrary conclusion.

. The evidence established that James lured Davis to join him by telling Davis that he (James) wanted Davis’s help with something. J.A. 1018-19. James and Davis drove off together, and soon after that James told Davis to pull over. J.A. 1019. James then shot Davis five times: once in the head, once in the back, once in the chest, and twice through Davis’s right arm and into his chest, J.A. 993-94. Any one of these shots could have been fatal. J.A. 992-94. James left Davis's bullet-riddled body lying on a prominent road in Orangeburg on which a large public high school is located. J.A. 975.

. In these pages of the transcript, James took the stand and emphatically denied killing James. J.A. 1059. All of James's testimony focused on whether he killed James, not any motivation for the killing. See J.A. 1059-89.

. When allocuting, James again denied the murder, without ever arguing that the murder was unrelated to the drug conspiracy. J.A. 1106.

.Although the district court perhaps could have more explicitly stated that it was adopting the other facts in the PSR, that the district court adopted those facts is obvious. See J.A. 1101-03. Without having done so, the district court would have had no basis for determining the applicable statutory provisions, which the district court based on the PSR.

. Nothing is necessarily inconsistent about the fact that James described an attempted robbery by Davis and a robbery by Davis. James may have been discussing two separate incidents, or he may have varied the story depending on his audience.