In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-2600

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAMES V. CARROLL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cr-114-JMS-DKL-1 — **Jane E. Magnus-Stinson**, *Judge.*

ARGUED APRIL 1, 2014 — DECIDED APRIL 29, 2014

Before TINDER and HAMILTON, *Circuit Judges*, and KAPALA,
*District Judge.*[*]

Kapala, *District Judge.* Defendant-Appellant, James V.
Carroll, pled guilty to one count of possession of child
pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and six

---

[*] The Honorable Frederick J. Kapala of the United States District Court for
the Northern District of Illinois, sitting by designation.

counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). Carroll now appeals the district court's denial of his motion to suppress having reserved the right to do so in his plea agreement. We affirm.

## I. Background

On February 7, 2012, a thirteen-year-old girl reported that she had been molested by Carroll when she was eight years old. On March 1, 2012, Detective Kurt B. Spivey of the Indianapolis Metropolitan Police Department began an investigation. On the same date, Detective Spivey presented a search warrant affidavit to a judge of the Superior Court of Marion County, Indiana, seeking to search Carroll's residence for evidence of child pornography and sexual exploitation of a child.

In his affidavit, Detective Spivey outlined his sixteen years of law enforcement experience including the last seven during which he primarily conducted child pornography and child exploitation investigations. Detective Spivey indicated that through his training and experience he developed a working knowledge and understanding that collectors of child pornography go to great lengths to secure and maintain their collections. According to Detective Spivey, child pornography collectors value and retain their collections because the images supply sexual gratification, are difficult to obtain, present a threat of prosecution, carry a highly negative stigma, and are used to trade for new images. Detective Spivey explained that it is common to find discarded or outdated computers stored in closets, basements, or attics for long periods of time and that even deleted images may be retrieved years later through a

forensic process. In particular, Detective Spivey indicated that in the past he found digitally stored images that were being used for sexual gratification up to five years after the images were created. He also noted that with current technology, images may be copied with the touch of a button between memory sticks and other storage devices with great ease and speed allowing images to be placed on multiple devices within a house. These devices provide a highly mobile source of storage which can easily be removed from a computer or other device and hidden.

Detective Spivey swore that on February 7, 2012, the victim reported that when she was eight years old she was molested by Carroll, a former babysitter who was also a friend and co-worker of her father. She reported that Carroll fondled her vagina, underneath her clothing, while on the couch. She also advised that Carroll showed her digital images on his camera of children that were younger than her in partial states of undress. The children were posed in front of professional back drops in "Victoria Secrets [sic] type pictures." She described the camera as Carroll's camera with the big lens. Additionally, she reported that an adult male she believed to be Carroll entered her bedroom, lifted her gown, and photographed her bare genitalia. She did not open her eyes, but believed it to be Carroll because the only other adult in the residence was her father, and she did not think it was him. She did not see the camera, but when she heard it operate she immediately believed it to be Carroll's camera. She explained that she knew Carroll to be a professional photographer, had spent time around Carroll with his camera, and was familiar with its operation.

Detective Spivey swore further that the victim's father advised that he works with Carroll, and that Carroll is a professional photographer. The father indicated that Carroll has a desktop computer in his office, takes his camera from the office to his residence on a daily basis, and uses the devices in conjunction with one another. He also indicated that Carroll uses a large number of thumb drives or memory sticks.

The Superior Court judge found that there was probable cause to search Carroll's residence and issued the warrant. The warrant authorized the police to search for, among other things, "[a]ny and all materials, supplies, devices used to produce, transport, develop, promote, store, distribute or display child pornography, evidence of child solicitation and/or child exploitation" including, among other things, "[a]ny home/personal computers and/or computer components, desktop/laptop computers, computer notebooks, computer disc drives, magnetic storage devices, computer software, flash and/or media cards, thumb drives, memory chips/components, CDs/DVDs and/or floppy discs," and "[a]ny photography equipment, cameras digital or conventional."

Police searched Carroll's residence on March 3, 2012. An analysis of Carroll's computer and other digital media located in his residence revealed numerous images of the victim in various states of undress engaged in sexually explicit conduct. During the search Carroll made incriminating statements to Detective Spivey. Other search warrants followed, accompanied by additional interviews with Carroll during which he made more incriminating statements. Carroll was ultimately charged with one count of possession of child pornography and six counts of sexual exploitation of the victim

for the purpose of producing visual depictions of her.
Thereafter, Carroll filed a motion to suppress in which he
argued that the information in Detective Spivey's affidavit was
stale because it was five years old and, thus, older than the
four-year-old evidence found to be stale in *United States v.
Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008).

In denying the motion to suppress, the district court
rejected Carroll's staleness argument relying in part on this
Court's analysis in *United States v. Seiver*, 692 F.3d 774 (7th Cir.
2012), and alternatively held that even if the search warrant
was not supported by probable cause the good-faith exception
to the exclusionary rule applied. *United States v. Carroll*, No.
1:12-cr-114-JMS-DKL-1, 2013 WL 937832 (S.D. Ind. Mar. 11,
2013). Thereafter, pursuant to a written plea agreement, Carroll
pled guilty to all counts while reserving his right to appeal the
denial of his motion to suppress. The district court accepted
Carroll's plea and imposed a 360-month sentence.

## II. Discussion

Carroll argues that the district court erred in denying his
motion to suppress because the information provided in the
affidavit was stale and therefore did not establish probable
cause to search his home. In addition, Carroll argues that the
district court erred in concluding that even if the search was
not supported by probable cause, the good-faith exception to
the exclusionary rule applies.

When a judge receives an application for a search warrant,
the judge must make "a practical, common-sense decision
about whether the evidence in the record shows a fair
probability that contraband or evidence of a crime will be

found in a particular place." *United States v. Miller*, 673 F.3d 688, 692 (7th Cir. 2012). Probable cause is a fluid concept that focuses on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quotation marks omitted). Determining whether probable cause exists requires a common-sense analysis of the facts available to the judicial officer who issued the warrant. *See id*. at 230, 238. Recency of the information provided to the issuing judge is one factor bearing on the question of probable cause. *United States v. Pappas*, 592 F.3d 799, 803 (7th Cir. 2010). "When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause." *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014). "Courts should defer to the issuing judge's initial probable cause finding if there is substantial evidence in the record that supports his decision." *Id*. (quotation marks omitted).

In his affidavit, Detective Spivey stated that the victim revealed that, five years earlier, Carroll had molested her, showed her pictures on his digital camera of young children in partial states of undress, and photographed her bare genitals while she was ostensibly sleeping. The issue before this Court is whether this information was too stale to create a fair probability that evidence of child pornography or sexual exploitation of a child would be found on a computer or other digital storage devices within Carroll's residence at the time the search warrant was issued. In evaluating this issue, we recognize that a staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology. *See Seiver*, 692 F.3d at

776-77. In this case, the warrant affidavit adequately addressed these considerations by explaining why Carroll may have retained the images of the victim on his computer or other digital storage devices, and how these images, even if deleted, may still be recoverable because they were not yet overwritten.

Detective Spivey's affidavit made clear that he had learned through training and experience that collectors of child pornography hoard their images for long periods of time because of the great personal value the images have for sexual gratification, the difficulty in obtaining the images as a result of their illegality, and their value to other collectors such that the images may be traded for new images. This "hoarding" habit among collectors of child pornography is well established in this Court's precedent. *See, e.g.*, *United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir. 2007) (endorsing the observation that child pornography is hoarded); *United States v. Hall*, 142 F.3d 988, 995 (7th Cir. 1998) (holding that child pornographers' tendency to maintain their collections for long periods of time was part of a showing demonstrating more than a fair probability that evidence of criminal activity would be discovered).

In *Prideaux-Wentz*, this Court recognized that "collectors and distributors [of child pornography] rarely, if ever, dispose of their collections," but determined that "there must be some limitation on this principle." 543 F.3d at 958. In finding that the search warrant in that case lacked probable cause because the evidence in the warrant affidavit was stale, this Court concluded that the information indicating that the defendant had uploaded child pornography may have been "at least four years old by the time the government applied for a warrant."

*Id*. This Court declined to hold that this evidence of this age was stale as a matter of law, but held that "the government's failure to find out the dates in which the pictures were uploaded supports a finding of staleness in this case because it could have easily obtained this information by contacting Yahoo!." *Id*. at 959. This Court concluded that "[t]he four year gap, without more recent evidence, undermines the finding that there was probable cause that the images would be found during the search." *Id*.

In recognition of the well-established hoarding habits of collectors of child pornography, this Court's holding in *Prideaux-Wentz* and cases from other circuits make clear that under certain circumstances years can pass between information about child pornography offenses and applications for search warrants without rendering the information stale. *See, e.g.*, *United States v. Burkhart*, 602 F.3d 1202, 1206-07 (10th Cir. 2010) (holding that an email between child pornography distributor and the defendant that occurred two years and four months before issuance of a search warrant for the defendant's home was not stale); *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (holding that a more than three-year lapse between the defendant's purchase of child pornography and the warrant application did not render the information stale because a special agent attested that those who download child pornography tend to retain images for years and use computers to augment and store collected images); *United States v. Eberle*, 266 F. App'x 200, 205-06 (3d Cir. 2008) (holding that three-and-a-half-year-old information was not stale "because individuals protect and retain child pornography for long periods of time as child pornography is illegal

and difficult to obtain"); *United States v. Irving*, 452 F.3d 110, 116, 125 (2d Cir. 2006) (rejecting staleness argument where warrant was issued based on, among other things, various letters the defendant wrote two or more years earlier about his past sexual exploitation of children, a five-year-old witness statement, child erotica images on diskettes found five years earlier in the defendant's luggage, and five-year-old identifications by children who witnessed the defendant sexually abuse young boys); *United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir. 2005) (finding five-year-old information relied upon in part in issuing search warrant was not stale).

These cases, of course, do not establish bright line time limits after which information concerning the possession of child pornography becomes too stale to support a finding of probable cause. Indeed, the case-by-case, totality-of-the-circumstances, nature of the probable cause determination militates against establishing a bright line time limit. *See Sutton*, 742 F.3d at 774 ("[T]here is no bright line rule for determining staleness."); *Pappas*, 592 F.3d at 803 (same). Consequently, we are not obligated to deem the information at issue in this case stale just because it is older than information at issue in any previous case including the four-year-old information that was deemed stale in *Prideaux-Wentz*. Instead, as is well understood, each case is *sui generis. See Gates*, 462 U.S. at 232 ("[P]robable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules.").

The facts presented to the issuing judge distinguish this case from *Prideaux-Wentz* and demonstrate a likelihood of

retention that was greater than could be expected in the normal child pornography case. Not only was Carroll the producer of the child pornography sought, but the images were of the bare genitals of the victim, whom he had personally molested. While pornographic images of anonymous children could be replaced with images of other anonymous children, Carroll's images of the eight-year-old victim were irreplaceable to him. Under these circumstances, it was fair for the issuing judge to infer that Carroll would highly value the images of the victim and retain them on some type of digital media for a very long time.

The staleness of the information at issue in this case was also diminished in several other ways not present in *Prideaux-Wentz*. For instance, the issuing judge in this case was presented with Detective Spivey's assertion that he had previously recovered five-year-old digitally stored pornographic images of children, while the issuing judge in *Prideaux-Wentz* did not have similar information. In addition, Detective Spivey sought a search warrant within days of learning of the victim's revelation, in contrast to *Prideaux-Wentz* where a year lapsed between the last tip that defendant uploaded child pornography and the application for the search warrant. *See Prideaux-Wentz*, 543 F.3d at 956-57. Moreover, Detective Spivey provided the issuing judge with a definitive time when Carroll possessed images of child pornography, whereas the issuing judge in *Prideaux-Wentz* was left to guess.

We must also take into account the possibility of recovering deleted images from the computer or other digital storage devices within Carroll's residence. In *Seiver*, this Court

recognized that even after a computer file is deleted it remains in the computer until it is overwritten, which allows computer experts to routinely extract deleted files from hard drives. 692 F.3d at 776. This Court noted that "'[s]taleness' is highly relevant to the legality of a search for a perishable or consumable object, like cocaine, but rarely relevant when it is a computer file." *Id.* at 777. While acknowledging that the longer the interval between uploading of the material sought and the search of the computer, the greater the possibility that a deleted file will no longer be recoverable because it has been overwrittten or because the computer has been sold or destroyed, this Court explained that:

> rarely will [these possibilities] be so probable as to destroy probable cause to believe that a search of the computer will turn up the evidence sought; for probable cause is far short of certainty—it requires only a probability or substantial chance of criminal activity, not an actual showing of such activity, and not a probability that exceeds 50 percent ("more likely than not"), either. Notice too that even if the computer is sold, if the buyer can be found the file will still be on the computer's hard drive and therefore recoverable, unless it's been overwritten.
>
> . . . .
>
> No doubt after a very long time, the likelihood that the defendant still has the computer, and if he does that the file hasn't been overwritten, or if he's sold it that the current owner can be identified, drops to a level at which probable cause to search

> the suspect's home for the computer can no longer be established. But seven months is too short a period to reduce the probability that a computer search will be fruitful to a level at which probable cause has evaporated.
>
>     . . . .
>
> The most important thing to keep in mind for future cases is the need to ground inquiries into "staleness" and "collectors" in a realistic understanding of modern computer technology and the usual behavior of its users. Only in the exceptional case should a warrant to search a computer for child pornography be denied on either of those grounds (there are of course other grounds for denial).

*Id.* at 777-78 (citations and quotation marks omitted). The possibility that Carroll deleted the images from one or more devices but that the images remained recoverable, or at least partially recoverable, extended the duration during which it could reasonably be expected that the images would be found, such that the five-year-old information provided by the victim was not stale. This consideration of recoverability, together with the other distinctions we have discussed, are more than sufficient to compensate for the circumstances that undermined the finding of probable cause in *Prideaux-Wentz.*

Carroll argues that the district court's reliance on *Seiver* was inappropriate because the facts in Spivey's affidavit do not contemplate the use of a computer in the crime. Carroll maintains that there was no information indicating that at the

time of the crime Carroll owned a computer, used a computer, or regularly transferred images between his camera and his computer. We disagree. The information before the issuing judge was that Carroll was a professional photographer in 2007 who utilized a digital camera. Thus, it was a fair inference that he used a computer in 2007 to augment and store the digital photographs that he took. In any event, the point in time that is relevant to the probable cause evaluation is when the warrant is issued. The warrant affidavit included information that Carroll was a professional photographer in 2012 and at that time carried his digital camera between his home and his office and used his camera in conjunction with a desktop computer at his office, as well as with thumb drives and memory sticks. It was therefore fair to infer that Carroll had a computer or other digital storage devices in his residence at the time the search warrant was issued in 2012. Moreover, the memory sticks and thumb drives are a means of storing electronic images. They cannot display images without the use of other equipment. Therefore, it was also fair to infer that Carroll used these thumb drives and memory sticks to transfer images to another computer or digital storage device within his residence.

Carroll also argues that digital cameras have much less storage capacity than a computer hard drive and, consequently, any deleted files therein would be overwritten much sooner than files on a hard drive. Based on this theory, he claims that the *Seiver* analysis is inapplicable in this case. Carroll cites various internet articles to establish the number of photographs that the respective types of equipment can typically store. Carroll did not, however, advance this

argument in the district court and has done so for the first time in his reply brief on appeal giving the government no opportunity to respond. The argument is therefore waived. *See United States v. Vitrano*, ___ F.3d ___, 2014 WL 1328273, at *3 (7th Cir. April 4, 2014). Moreover, we cannot consider the articles referenced by Carroll because they were not presented to the district court and are not part of the record on appeal. *See* Fed. R. App. P. 10(a). In any event, the warrant affidavit in this case gave ample reason to infer that Carroll, a professional photographer, could and would manage limited memory capacity on his cameras by saving digital images on other storage devices.

Carroll also argues that the information in the affidavit was stale even under *Seiver* due to the extraordinary amount of time between the crimes alleged by the victim and the issuance of the search warrant. Carroll maintains that the delay in this case was sixty months, which is eight-and-one-half times the delay of seven months in *Seiver*. In *Seiver*, this Court explained that only after a very long time would the likelihood that a file had been overwritten rise to a level at which probable cause could no longer be established and that seven months was too short a period to reduce the probability to a level at which probable cause had evaporated. 692 F.3d at 777. In other words, this Court said seven months did not constitute the very long time after which deleted images could no longer be expected to be recovered, but we declined, as we do here, to define that time in terms of months or years. Instead, we hold only that, under the circumstances of this case, the information in the warrant affidavit was not stale because it remained reasonable to expect that images of child pornography would

be present on defendant's computer or other digital storage devices or, if deleted, that the images could be recoverable.

### III. Conclusion

For these reasons, consistent with the necessary deference to the issuing judge's determination of probable cause, we conclude that the information in Detective Spivey's affidavit was sufficient to establish a fair probability that the computer or other digital storage devices within Carroll's residence would contain evidence of child pornography or sexual exploitation of a child, despite the fact that the photographs were taken approximately five years earlier. Therefore, we hold that there is a substantial basis in the record to support the decision to issue the search warrant for Carroll's residence. As a result, we need not reach the issue of good-faith reliance on the search warrant. Thus, Carroll's conviction is AFFIRMED.