In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1192

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ROGER ALESHIRE,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 14-cr-79-jdp — **James D. Peterson**, *Judge*.

ARGUED JUNE 2, 2015 — DECIDED JUNE 5, 2015

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. After a sleepover at the house of Roger Aleshire, a nine-year-old girl reported to her mother having a "dream" that Aleshire had pulled down her pajama bottoms and photographed her "privates". Her mother called the police. Aleshire admitted entering the room where the girls (including Aleshire's daughter) were sleeping, but he denied moving or removing any girl's clothing; instead, Aleshire maintained, he was searching for his

daughter's headphones. A state judge issued a search war-
rant. After executing that warrant the police found child
pornography, which Aleshire had created. He pleaded guilty
to violating 18 U.S.C. §2251 but, with the consent of the
prosecutor and the judge, reserved an opportunity to contest
on appeal the district court's denial of his motion to sup-
press the evidence found in the search. See Fed. R. Crim. P.
11(a)(2). His sentence, which he does not contest, is 300
months' imprisonment.

His argument is simple: Probable cause depends on facts
rather than dreams. Aleshire insists that because the girl
called her memory a "dream" it must have been a dream. If
it was a dream, the Fourth Amendment did not allow a
search. But the district judge concluded that probable cause
exists because the girl's use of "dream" may have been a eu-
phemism selected because she was uncomfortable describ-
ing the acts she narrated. Even mature people may use eu-
phemisms when describing sexual conduct; what this girl
described was outside the range of her experience and may
have seemed shameful or scarcely believable. Either could
have led to the use of the word "dream" to describe reality.
So the district judge thought.

Aleshire contends on appeal that the district judge is
wrong about this. That's not the appropriate question, how-
ever. This search was authorized by a warrant, and follow-
ing a strong suggestion in *Illinois v. Gates*, 462 U.S. 213, 236
(1983), we held in *United States v. McIntire*, 516 F.3d 576 (7th
Cir. 2008), that a warrant-authorized search must be sus-
tained unless it is pellucid that the judge who issued the
warrant exceeded constitutional bounds. The precise stand-
ard in *McIntire* is: "A district court's findings of historical

fact are reviewed for clear error, whether or not a warrant issued. [*Ornelas v. United States*, 517 U.S. 690, 699 (1996).] A district judge's legal conclusions are reviewed without deference. And on the mixed question whether the facts add up to 'probable cause' under the right legal standard, we give no weight to the district judge's decision—for the right inquiry is whether the judge who issued the warrant (rarely the same as the judge who ruled on the motion to suppress) acted on the basis of probable cause. On *that* issue we must afford 'great deference' to the issuing judge's conclusion." 516 F.3d at 578 (emphasis in original).

Giving the issuing judge the benefit of "great deference," we conclude that it was permissible to understand the word "dream" as a euphemism. Aleshire has not offered any evidence (say, a child psychologist's affidavit) that might show that nine-year-old girls always use the word "dream" literally. And the girl's description was not the only fact in the affidavit submitted in support of the application for a warrant. The affidavit relayed a statement by the girl's mother that the girl had used the word "dream" to describe real events before (she said, for example, that she had dreamed crawling into her parents' bed—which the mother knew that she had done). The affidavit relayed Aleshire's admission that he had entered the girls' sleeping area. It added that he had been convicted of sex crimes. Perhaps none of these facts by itself supplied probable cause, but judges do not view facts in isolation. As *Gates* holds, the question is whether the available facts, taken together, justify the proposed intrusion into the suspect's private life. This was a properly issued warrant.

AFFIRMED