In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1734

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FERNANDO D. BOLDEN,

*Defendant-Appellant.*

Appeal from the United States District Court for
the Eastern District of Wisconsin.
No. 2:24-cr-00002-JPS-1 — **J. P. Stadtmueller,** *Judge.*

ARGUED FEBRUARY 13, 2026 — DECIDED JUNE 12, 2026

Before BRENNAN, *Chief Judge*, HAMILTON, and SCUDDER,
*Circuit Judges*.

SCUDDER, *Circuit Judge*. Shortly after police observed Fernando Bolden enter a Milwaukee residence carrying a gun, they obtained a warrant to search the home. The search recovered a gun, loaded magazines and ammunition, bags of fentanyl and other drugs, and $50,259 in cash. A federal indictment followed, and in time Bolden pleaded guilty to two firearms charges. In doing so, he reserved his right to challenge

the search warrant as unsupported by probable cause and the product of police misrepresentation. While we see the probable cause analysis as a closer call, we have no trouble agreeing with the district court that the Milwaukee police acted in good faith reliance upon the warrant in conducting the search. So we affirm Bolden's convictions on that basis.

**I**

**A**

In December 2022, a confidential informant told Milwaukee police officers that a drug dealer known as "Blessed" had attempted to give him a sample of crack cocaine. The informant provided a physical description of "Blessed" and stated that he drove a red BMW sedan. In early 2023, the informant also reported that "Blessed" was armed and lived near North 43rd Street and West Good Hope Road in Milwaukee.

The police then built on this information. A license plate check revealed that the red BMW was registered to Latia N. Johnson, whose address was 7169 North 42nd Street in Milwaukee. Utility records likewise showed Johnson living at the same address. Police records indicated that Johnson was Bolden's girlfriend. And, upon viewing Bolden's most recent booking photo, the informant identified him as "Blessed." Wisconsin court records revealed that Bolden was a convicted felon.

On March 21, 2023, Detective Richard Ticcioni parked in the rear lot of 7169 North 42nd Street to conduct surveillance in an investigation unrelated to Bolden. At around 9:44 a.m., Detective Ticcioni observed—and captured on video—Bolden drive a silver sedan into the parking lot and exit the vehicle carrying a gun. After placing the gun in his pants, Bolden

walked toward the residence while holding a set of keys. He then entered 7169 North 42nd Street.

Three days later, on March 24, Officer Matthew Brooks recounted these facts in an affidavit supporting an application for a warrant to search the 42nd Street residence. A Wisconsin circuit court commissioner reviewed the affidavit, found it supported probable cause, and authorized a search for, among other things, guns and items associated with firearms.

Milwaukee police executed the warrant on March 27. As they arrived at the address, officers observed Bolden exit the home with a gun and enter a vehicle. They arrested him shortly thereafter at a nearby gas station, finding a loaded gun on him. Back at the residence, officers found another gun, three loaded magazines, ammunition, $50,259 in cash, a money counting machine, and bags containing fentanyl, crack cocaine, and powder cocaine, among other items.

B

Bolden initially faced prosecution in Wisconsin state court, but law enforcement soon learned that he was dealing drugs while released on bail. A federal grand jury then issued a seven-count indictment against Bolden, charging him with drug and firearm offenses.

Bolden moved to suppress the evidence from the search of 7169 North 42nd Street, asserting that Officer Brooks' affidavit failed to establish he resided there. He also sought a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), alleging that the affidavit contained material false statements and omissions. The government disagreed, in part by relying on *United States v. Leon*, 468 U.S. 897 (1984), to contend that, even if the affidavit fell short of establishing probable cause, the good-

faith exception to the exclusionary rule applied to prevent suppression.

A magistrate judge agreed with the government, finding that Officer Brooks' affidavit supplied probable cause and, at the very least, the officers acted in good faith reliance on the warrant in conducting the search. The magistrate judge also determined that Bolden had not made the requisite showing for a *Franks* hearing.

The district court saw the probable cause question differently, concluding that Officer Brooks' affidavit offered too little evidence connecting Bolden with the 42nd Street residence. In the end, though, the district court agreed with the magistrate judge's conclusions that the good-faith exception applied to save the officers' reliance on a flawed warrant and that a *Franks* hearing was unnecessary.

Bolden then entered a conditional plea of guilty to possessing a firearm both as a convicted felon (18 U.S.C. § 922(g)(1)) and in furtherance of a drug trafficking offense (18 U.S.C. § 924(c)(1)(A)(i)). He reserved his right to appeal the district court's denial of his suppression motion. The district court then sentenced Bolden to 75 months' imprisonment.

Bolden now appeals.

## II

On appeal from the district court's denial of a motion to suppress, we review legal conclusions without deference and factual findings for clear error. See *United States v. Glover*, 755 F.3d 811, 815 (7th Cir. 2014).

Both sides devote substantial attention to whether Officer Brooks' warrant affidavit supplied probable cause to search the 42nd Street residence. They debate whether it "contain[s] facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found" in the residence. *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010); see also *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (defining probable cause to require "a fair probability that contraband or evidence of a crime will be found in a particular place").

The parties do not dispute that Officer Brooks' affidavit failed to establish that Bolden lived at the 42nd Street residence. Their disagreement centers on whether the affidavit nonetheless contained facts sufficient not only to connect Bolden to the residence, but also to support an inference that he would be likely to keep guns, ammunition, and the like at that location. Cf. *United States v. Yarber*, 915 F.3d 1103, 1105–06 (7th Cir. 2019) (assessing whether the police presented enough connection between the defendant's drug dealing and his girlfriend's apartment for probable cause to search).

The government is correct to observe that Officer Brooks' affidavit supported a finding that Bolden had substantial and regular access to the 42nd Street residence, even if he did not live there. Foremost, the affidavit stated that Detective Ticcioni had witnessed Bolden enter the house unassisted and in broad daylight just three days prior to the warrant application. Add in that Bolden's girlfriend paid the utility bills at the location and that the informant stated that Bolden lived near an intersection just one block away and it begins to sound probable that Bolden had enough access to store items within the home.

Bolden begs to differ, emphasizing that nothing in the affidavit explained the basis for the informant's representation that he lived in the vicinity of the 42nd Street residence. Indeed, he points to records from a prior paternity action showing that he lived in an altogether different area of Milwaukee. Nor, Bolden underscores, did the affidavit tell the issuing judge specifically why the police believed he and Latia Johnson were in a romantic relationship. As Bolden sees it, then, Officer Brooks' affidavit did little more than recount a single instance in which Bolden entered the 42nd Street residence—a showing far short of establishing the probable cause necessary to support a search warrant for weapons.

Both sides make fair points, echoing the differing perspectives offered by the magistrate judge and district court. We too see the probable cause question as close. On the one hand, the affidavit shows that Bolden was no casual guest at 7169 North 42nd Street. On the other, however, the police could have offered greater and more precise support for the facts underlying this conclusion.

In the end, we need not resolve whether Officer Brooks' affidavit crossed the threshold of probable cause. Even if Bolden is correct that probable cause was lacking, we conclude that the search survives his motion to suppress under the good-faith exception to the exclusionary rule. See *Leon*, 468 U.S. at 920–22 (concluding that suppression is not the appropriate remedy "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope"); *United States v. Thompson*, 801 F.3d 845, 848 (7th Cir. 2015) ("[W]e need not decide whether the state judge who issued the warrant had a basis for finding

probable cause, since the search … survives a motion to suppress under the good-faith exception of *Leon*.").

## III

"**[**T]he fruits of a search based on an invalid warrant may be admitted if the officers who executed the search relied upon the warrant in good faith." *Yarber*, 915 F.3d at 1106. Indeed, Officer Brooks' decision to obtain a warrant creates a presumption that he acted in good faith. See *United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020). To rebut this presumption, Bolden "must show the existence of a situation in which the good-faith exception does not apply." *Id.* Hewing to *Leon*, our case law recognizes several such situations, including "when the affiant misleads the magistrate with a reckless or knowing disregard for the truth." *Glover*, 755 F.3d at 818.

"An affiant acts with reckless disregard for the truth when he in fact entertains serious doubts as to the truth of his allegations." *United States v. Williams*, 718 F.3d 644, 650 (7th Cir. 2013) (cleaned up). This "requires more than a showing of negligence and may be proved from circumstances showing obvious reasons for the affiant to doubt the truth of the allegations." *Edmond v. United States*, 899 F.3d 446, 457 (7th Cir. 2018) (cleaned up).

Bolden first attempts to fend off *Leon*'s presumption by contending that Officer Brooks deliberately or recklessly included a false representation in the affidavit when recounting the evidence Detective Ticcioni obtained on March 21, 2023. In relevant part, the affidavit stated:

> 22. Affiant is aware that Detective Ticcioni stated the driver walked to the rear door of 7169

> N. 42nd St., used keys to open the rear door, and entered the residence; …
>
> 24. Affiant is aware that Detective Ticcioni captured this incident on video, which the Affiant reviewed and corroborated Detective Ticcioni's statement.

Bolden points out that Detective Ticcioni's cellphone video does not reveal how he entered the 42nd Street residence. Even more specifically, Bolden emphasizes that a parked vehicle obscured the view of the door to the residence, thereby making it impossible to see and "corroborate" that Bolden "used keys to open the rear door."

We acknowledge that the video does not show Bolden putting a key in the door and turning a lock before entering the home. But it does capture Bolden walking toward the residence with keys in his hand and then entering unassisted through the rear door. On these facts, we cannot agree that Officer Brooks misrepresented what he saw on the video. Indeed, the video does corroborate most aspects of Detective Ticcioni's reported statement.

Further, to the degree the affidavit's description was imprecise, it was not deliberately or recklessly misleading. "[G]iven the slight gap between what the affidavit said and what it should have said, a reasonable observer would find it difficult to infer anything worse than negligence." *United States v. Daniels*, 906 F.3d 673, 677 (7th Cir. 2018); see also *United States v. Fifer*, 863 F.3d 759, 765 (7th Cir. 2017) ("Such an inconsequential (apparent) discrepancy … falls far short of negating the presumption of good faith.").

Bolden's more persuasive argument against good faith comes in his suggestion that Officer Brooks omitted important information from the affidavit. See *Glover*, 755 F.3d at 819–20 (recognizing that an omission can defeat the presumption of good faith). In particular, Bolden observes that the public docket of a December 2022 paternity action between him and Johnson listed him with a different Milwaukee address. He maintains that Officer Brooks withheld the other address to strengthen the affidavit's connection between Bolden and the 42nd Street residence.

But Bolden's argument falters because we see no indication that Officer Brooks reviewed the docket of the paternity case. Even if we are mistaken in that observation, the information in the paternity docket does not contradict the allegations in the affidavit. The affidavit never stated where Bolden resided and instead presented facts showing that he had access to the 42nd Street residence. Had Officer Brooks reviewed the paternity docket, Bolden's use of another address some three months prior would not provide an obvious reason to doubt that Bolden maintained significant links to the 42nd Street residence in March 2023.

One final observation deserves mention. Bolden's opening brief does not clearly challenge the district court's denial of his motion under *Franks*. See *United States v. Jones*, 34 F.3d 495, 499 (7th Cir. 1994) ("[A]n argument not made in the opening brief is waived."). Regardless, he would only be entitled to a *Franks* hearing if he can make a "substantial preliminary showing" that Officer Brooks' misrepresentation or omission was reckless or deliberate. *United States v. Hueston*, 90 F.4th 897, 902 (7th Cir. 2024) (cleaned up). Bolden has not done so here.

For these reasons, we AFFIRM.